

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

---

No. 08-25-00150-CV

---

Roberto Huerta, Appellant

v.

Swabco, Inc., Appellee

---

On Appeal from the 109th District Court
Andrews County, Texas
Trial Court No. 22,656

---

## MEMORANDUM OPINION

Appellant Roberto Huerta sued his former employer Appellee Swabco, Inc., (Swabco) after he sustained injuries while on the job. On appeal, Huerta challenges the trial court's granting of Swabco's no-evidence summary judgment. We affirm.

### I. BACKGROUND

#### A. Parties' pleadings

In June 2022, Huerta filed suit against Swabco, asserting as a cause of action "intent to injure." He alleged that on October 26, 2021, he and his coworker, Rafael Mendoza, were traveling

in a Swabco truck along Highway 181 in Andrews County. At some point, the truck veered off the road, injuring Huerta and Mendoza. Huerta received unemployment benefits through Swabco's worker compensation insurance program from the time of the accident until about January 2024.

Huerta alleged that prior to the accident, he "reported experiencing problems with the vehicle's suspension to his supervisor—both orally and by text message—and expressed concern that continuing to use the vehicle in that condition would result in injury to him." He asserted that that the truck's suspension failed and caused the truck to veer off the road. Huerta further stated that "[b]ased on, among other things, the information provided by Huerta, Swabco had to know driving or riding in the truck in its condition was substantially certain to result in failure of the vehicle's suspension resulting in a loss of control and injury to any driver or passenger." He contended that Swabco "knew that the work truck it furnished to Huerta was unsafe and that driving or riding in it was substantially certain to result in loss of control and injury to any driver or passenger" and that Swabco, despite this knowledge, "demanded that Huerta keep using the truck." Huerta claimed that Swabco "intended Huerta to continue to take a risk that was substantially certain to occur and that did occur."

In its answer, Swabco asserted the exclusive remedy provision of the Texas Workers' Compensation Act (TWCA) as an affirmative defense. *See* Tex. Lab. Code § 408.001(a); *Berkel & Co. Contractors, Inc. v. Lee*, 612 S.W.3d 280, 281 (Tex. 2020) ("The Texas Workers' Compensation Act is the exclusive remedy for employees who sustain nonfatal work-related injuries."); *see also In re ExxonMobil Corp.*, No. 14-25-00446-CV, 2025 WL 3672143, at *2 (Tex. App.—Houston [14th Dist.] Dec. 18, 2025, orig. proceeding) ("[T]he exclusive remedy provision bars a subscribing employee from recovering damages for work-related injuries that are attributable to the subscribing employer's negligence and gross negligence.") (citing *Mo-Vac Serv. Co. v. Escobedo*, 603 S.W.3d 119, 125, 128 (Tex. 2020)). Also, Swabco specifically denied that it

"acted with intent" or intended to injure Huerta. It further alleged that the driver of the vehicle was at fault for the accident.

### B. Summary judgment proceedings

Swabco filed a no-evidence motion for summary judgment. Tex. R. Civ. P. 166a(i). It challenged the sufficiency of Huerta's pleadings, arguing that "intent to injure" is not a recognized cause of action and that, even if it were, Huerta failed to allege that Swabco intended to harm him specifically, as required to avoid the exclusive remedy defense. Further, Swabco contended that Huerta had no evidence that Swabco's actions were "substantially certain to cause the injury" and the defendant must have "intended specifically to harm [the plaintiff] personally."

In response, Huerta argued that the issue of intent was an element of the exclusive remedy affirmative defense and that Swabco's motion should be denied "because it is well-settled that a defendant cannot move for summary judgment under Rule 166a(i) on an affirmative defense." Alternatively, Huerta argued that he was able to offer "more than a scintilla of evidence establishing" that Swabco acted with the requisite intent and thus, his suit is not precluded by the TWCA's exclusive remedy bar.

In support of his response to Swabco's summary judgment motion, Huerta attached the Texas Peace Officer's Crash Report. It detailed how the accident took place and that "the driver stated that he believed that he had fallen asleep." Huerta also produced a text message to his supervisor on September 27, 2021, in which he wrote regarding the truck: "You scare yourself to drive on the highway, you step on any hole and you almost go off the road. The truck needs oil change and filters, needs shocks too, maybe some work in the suspension, is scar[y]." In addition, Swabco vehicle maintenance records provided by Huerta reveal what inspection, maintenance, or repairs were performed on the vehicle in the lead up to the accident. According to the form for year 2021, the truck was serviced seven times in the leadup to the accident, with the most recent service

being on October 1, 2021, when there was an "oil change/brake job."[1] Swabco also kept driver vehicle inspection reports for the truck, with the most recent completed on August 13, 2021. That report did not indicate that anything was wrong with the truck or that it needed service or maintenance.

Huerta's summary judgment evidence also included a declaration from Mendoza. Mendoza stated that the truck was difficult to control and that when he tried to turn the steering wheel, the tires did not always respond. He said that "[n]early every day" that he worked with Huerta he personally observed Huerta notify various Swabco employees that the truck assigned to them was difficult to control and saw him complete vehicle maintenance reports that he submitted to the company. Mendoza testified that Huerta also told the owner of Swabco about the problems with the truck. Regarding this exchange—which Mendoza maintained was 15 to 20 days prior to the accident—Mendoza stated: "I remember the owner responding to Mr. Huerta that he was aware of the issues with our truck; he said that he ordered new trucks but that it would take close to a year before the order was filled." Finally, Mendoza stated that he did not fall asleep during the drive and that the accident occurred because he could not control the vehicle with the steering wheel.

Though there were no inspections of the truck done after the accident, Huerta stated in his deposition that the accident was the result of "mechanical failure" and that the truck was exhibiting problems from the very beginning of when he and Mendoza began to use it. Huerta described the mechanical problem was that something "became loose in the steering wheel and caused it to stop functioning." Further, he said, "I know a little mechanic. And I know that it had to do with the steering"—which he reported to the company.

---

[1] In the six times the truck was serviced before October 1, 2021, servicing included work on the fuel nozzle, checking and changing oil and air filters, new tires, as well as replacing freon.

4

In his deposition, Huerta was questioned about his allegations that Swabco intentionally tried to hurt him. He answered, "What I'm saying it was negligence because I had asked them for another truck and they wouldn't give me one." During his deposition, he re-iterated his feeling that Swabco did not intentionally try to harm him, but that it was negligent. The end of the deposition featured this exchange:

> COUNSEL: And so as you sit here today, you don't have anybody that can testify as to what the real cause of the mechanical issues that you alleged caused this accident, isn't that true?
>
> HUERTA: I'll leave it up to the jury and the judge.
>
> COUNSEL: Can I take that answer as a no, that you don't have any evidence of that?
>
> HUERTA: I have my word and I know that that would cause an accident.

The trial court granted Swabco's motion for summary judgment and this appeal followed.

## II. ISSUES ON APPEAL

Huerta asserts three issues on appeal. In his first issue, he contends that Swabco's challenges to the sufficiency his pleadings and the viability of his "intent to injure" cause of action could only be raised by special exception and not a motion for summary judgment. In his second issue, he asserts that the trial court erred by granting a no-evidence summary judgment on an affirmative defense for which Swabco had the burden of proof. In his third issue, Huerta asserts that he produced "more than a scintilla of evidence" to raise a genuine issue of material fact that that Swabco intended to injure him.

## III. STANDARD OF REVIEW

A party may file a no-evidence motion for summary judgment on the grounds that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(2). Once filed, the burden shifts to

5

the nonmovant to present evidence raising a genuine issue of material fact on each of the challenged elements. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021). "[A] no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). There is less than a scintilla "when the evidence is so weak as to do no more than create a mere surmise or suspicion of fact." *Id.* (internal quotations omitted). If the nonmovant does not meet its burden, the trial court must grant the motion. Tex. R. Civ. P. 166a(i).

When we review a trial court's ruling on a no-evidence motion for summary judgment, we "examine the evidence in the light most favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve any doubts against the motion." *Bolanos v. Purple Goat, LLC*, 649 S.W.3d 753, 763 (Tex. App.—El Paso 2022, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). We review the trial court's order granting summary judgment de novo. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017).

## IV. APPLICABLE LAW

When an employer carries workers' compensation insurance, the TWCA is the only remedy for employees who receive nonfatal work-related injuries. Tex. Lab. Code § 408.001(a). An employer covered by insurance can raise the exclusive remedy affirmative defense to a suit by an injured employee. "A narrow common-law exception exists, but the exception requires that the defendant have a specific intent to injure the plaintiff." *Berkel & Co. Contractors*, 612 S.W.3d at

6

281 (citing *Reed Tool Co. v. Copelin*, 689 S.W.3d 404, 406 (Tex. 1985)); *id*. at 285 (referring to this exception as the "intentional-tort exception").

The Texas Supreme Court has defined intent "as having two parts, one purposive—that 'the actor desires to cause consequences of his act'—and the other shown by his 'belie[f] that the consequences are substantially certain to result from it.'" *Escobedo*, 603 S.W.3d at 121 (quoting *Reed Tool*, 689 S.W.3d at 406); *ExxonMobil*, 2025 WL 3672143, at *7 ("For the intentional-tort exception to the exclusive remedy to apply, the employer must either (1) purposely desire to cause the consequences of its act, or (2) believe that its actions are substantially certain to result in a particular injury to a particular employee, not merely highly likely to increase overall risks to employees in the workplace."). The Texas Supreme Court described the differences between the two parts this way:

> In the first part of the definition, the actor is purposeful, as for example, if he drew back and slugged his victim on the jaw. Though the second part of the definition is something less than purposeful, we determined that '[t]he overwhelming weight of authority from other jurisdictions is that the common law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury.'

*Escobedo*, 603 S.W.3d at 125–26 (quoting *Reed Tool*, 689 S.W.2d at 406).

Huerta's claim requires an analysis of the second part—whether Swabco possessed a belief that Huerta's injury was "substantially certain to result" from its actions. *See id*. To establish that the intentional injury exception applies, allowing a plaintiff to avoid the exclusive remedy of workers' compensation benefits, the plaintiff is required to prove that the "employer [] believe[d] that its actions are substantially certain to result in a *particular* injury to a *particular* employee, not merely highly likely to increase the overall risks to employees in the workplace." *Id*. at 130 (emphasis added). Even an intentional failure to "furnish a safe place to work does not rise to the level of intentional injury except when the employer believes his conduct is substantially certain

7

to cause the injury."[2] *Id*. at 126. To establish liability, "more than the knowledge and appreciation of risk is necessary; the known danger must cease to become only a foreseeable risk which an ordinary, reasonable, prudent person would avoid (ordinary negligence) and become a substantial certainty." *Reed Tool*, 689 S.W.2d at 406; *Berkel & Co. Contractors*, 612 S.W.3d at 285 ("Texas has held that dangerous conduct, standing alone, does not support a finding of intent.").

## V. ANALYSIS

Because they are dispositive, we address only Huerta's second and third issues.

### A. TWCA exclusive remedy defense and no-evidence summary judgment

A no-evidence motion for summary judgment is proper only on issues for which the nonmovant has the burden of proof. *See* Tex. R. Civ. P. 166(a)(2); *Thomas*, 156 S.W.3d at 684 (noting that the movant for a no-evidence motion for summary judgment "cannot rely on an affirmative defense that it has the burden to prove at trial"). In his second issue, Huerta argues that the trial court erred because Swabco was precluded from asserting the TWCA exclusive remedy defense by way of a no-evidence motion for summary judgment. Specifically, Huerta contends that employers invoking the exclusive remedy affirmative defense have the burden to prove that it lacked the intent to injure and cannot shift that burden to the employee by a no-evidence motion for summary judgment.

To establish the exclusive remedy defense, an employer must show "that the injured worker was: (1) its employee at the time of the work-related injury or death; and (2) the work-related

---

[2] The Texas Supreme Court provided another, more detailed way of explaining this:

> Even if the alleged conduct goes beyond aggravated negligence and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of its accidental character.

*Escobedo*, 603 S.W.3d at 126 (quoting *Reed Tool*, 689 S.W.2d at 406).

injury or death was compensable by workers' compensation insurance." *Painter v. Amerimex Drilling I, Ltd.*, 632 S.W.3d 156, 160 (Tex. App.—El Paso 2021, no pet.); Tex. Lab. Code § 408.001(a), § 401.011(10); *see also In re ExxonMobil Corp.*, No. 14-25-00446-CV, 2025 WL 3672143, at *2 (Tex. App.—Houston [14th Dist.] Dec. 18, 2025, no pet.). *Reveles*, 574 S.W.3d at 37; *Gustafson v. Complete Mfg. Servs. Inc.*, No. 09-18-00415-CV, 2020 WL 4210499, at *3 (Tex. App.—Beaumont July 23, 2020, no pet.) (mem. op.).

The parties do not dispute these elements of the affirmative defense—that Huerta was Swabco's employee and that his injury was covered by workers' compensation insurance. The disputed issue is whether Swabco intended to injure Huerta. "Intent to injure" is an *exception* to the exclusive remedy defense as well as an element of Huerta's claim to recover. It was therefore an issue for which Huerta had the burden of proof. [3] Swabco's motion for a no-evidence summary judgment was proper. *See, e.g., Escobedo*, 603 S.W.3d at 121, 123, 130–32 (defendant moved for no-evidence summary judgment and Court evaluating if there was any evidence that defendant "believed his accident was substantially certain to result."); *Simon*, 2018 WL 1542437, at *1–2, 4–6 (raising no-evidence summary judgment on plaintiff's intentional injury claims); *ExxonMobil Corp.*, 2025 WL 3672143, at *11 (affirming grant of employer's no-evidence motion for summary judgment because employee did not present evidence raising a fact issue on the intentional tort exception to the exclusive remedy defense). We overrule Huerta's second issue.

---

[3] In support of his of its argument that Swabco had the burden of proof, Huerta cites *Rodriguez v. Naylor Indus., Inc.* in which the Court stated that it was the employer's "burden to establish that it lacked the requisite intent and [Naylor] was, therefore, entitled to judgment as a matter of law [on its exclusive remedy defense]." *Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 413 (Tex. 1989). However, in that case the employer had filed a *traditional* motion for summary judgment and therefore had the burden of negating one or more elements of the employee's claim. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). In this case, Swabco filed a *no-evidence* motion for summary judgment. Under the no-evidence standard, Swabco had no burden to present evidence. *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021).

**B. Huerta did not raise a material fact on the intentional tort exception**

In its no-evidence motion, Swabco argued that Huerta failed to provide any evidence that it intended to cause him harm or believed that its actions were substantially certain to cause him injury. *See Berkel & Contractors Co.*, 612 S.W.3d at 281–82. Huerta was required to provide more than a scintilla of evidence that Swabco "believed that its actions [were] substantially certain to result in a particular injury to a particular employee, not merely highly likely to increase the overall risks to employees in the workplace." *Escobedo*, 603 S.W.3d at 130. The record before us contains evidence that Huerta communicated his concerns about the truck's problems to the company. It even contains evidence that the owner of the company was aware of the problems in the days before the accident. But this evidence, while it may support claims of negligence or recklessness, does not support a claim that Swabco was "substantially certain" that an accident would occur and injure Huerta. *See id.*; *Berkel & Co. Contractors*, 612 S.W.3d at 286–87 ("There is no evidence that Miller knew or believed that his orders to continue attempting to free the auger would *unavoidably* result in the crane or the leads collapsing atop someone.") (emphasis in original); *ExxonMobil*, 2025 WL 3672143, at *9 (holding that plaintiff did not raise a fact question on the applicability of the intentional tort-exception because plaintiff's evidence only showed an accident "could" take place).

Despite whatever problems the truck had before the accident, Huerta and Mendoza were able to drive the truck without incident for some time and the vehicle inspection and maintenance reports did not reveal any mechanical defects for the truck prior to the date of the accident. In fact, Swabco's records indicate that the truck was serviced just 20 days prior to the accident. Though Swabco might have been aware of Huerta's complaints, the evidence indicating that the truck was operating without serious issues speaks to a degree of *uncertainty* that some unknown,

undocumented mechanical issue would cause an accident. *See Berkel & Co. Contractors*, 612 S.W.3d at 286 (rejecting plaintiff's argument that the intentional tort exception applied because the evidence did not indicate that the actions of the employer would "*unavoidably* result" in the accident that caused injury) (emphasis in original); Aside from his reports, unsubstantiated by recent servicing of the truck, Huerta provides no evidence that Swabco had knowledge that Huerta's accident was unavoidable.

Huerta argues that his case is on "all fours" with *Rodriguez v. Naylor Industries, Inc.*, 763 S.W.2d 411 (Tex. 1989). The Texas Supreme Court recently wrote that *Rodriguez* "illustrates the evidence that is needed for the intentional tort-exception." *Escobedo*, 603 S.W.3d at 129. The Court summarized *Rodriguez* this way:

> Naylor's employee, Rodriguez, was told by his supervisor, Cameron, to drive a specific delivery truck on a specific 250-mile route from Rockdale to Corpus Christi by way of Port Lavaca. Rodriguez inspected the truck's six tires—two on the front axle and four on the rear—and reported to Cameron that they were cracked and had no tread and that the inner tube was even visible on one. Cameron responded: "That truck has to go to Port Lavaca and then . . . to Corpus Monday morning . . . . Either take it or walk." Some 70 miles into the trip, one of the front tires blew out. Rodriguez hitchhiked four miles to the nearest town, called another Naylor supervisor, Wallace, in Houston, about 100 miles away, and asked him to bring a spare tire. When Wallace arrived, he instructed Rodriguez to replace the ruined front tire with one of the back tires. Though Wallace knew it was illegal to drive the truck without all six tires, he told Rodriguez to continue driving to a place where they could get a new tire. Rodriguez continued the trip with Wallace following him. Sixty miles later, the lone back tire on one side blew out, causing the truck to flip over, injuring Rodriguez.
>
> The evidence showed that Cameron had to know that driving the truck in its condition was substantially certain to result in a blowout resulting in a loss of control. Cameron's order to "either drive the truck or walk" showed that he intended Rodriguez to risk the specific danger. When a blowout did occur, Wallace's demand that Rodriguez keep driving also showed that he intended Rodriguez to continue to take a risk that was not only substantially certain but had already occurred once to the same driver in the same truck with the same problem an hour earlier. We held that the evidence raised a fact issue whether Naylor acted with intent.

*Id*. at 129 (footnotes omitted). In distinguishing those facts from the facts of *Escobedo*, in which a driver fell asleep while working illegally long hours, the Texas Supreme Court stated, "[K]nowing

the condition of the tires, knowing that one had already blown, and knowing that Rodriguez needed to be followed to get a new tire was, we concluded, evidence to raise a fact issue." *Id*. at 130

In this case, there is no evidence that Swabco supervisors witnessed or were told of serious problems with the truck (like the exposed inner tube in *Rodriguez*) or instructed Huerta to take dangerous and illegal actions (like driving without six tires). To the contrary, there was evidence that Swabco regularly inspected the truck and had done so 20 days before the accident. *ExxonMobil*, 2025 WL 3672143, at *10 (considering, while analyzing evidence of an employer's intent, that gas monitoring before flash fire indicated that no hazardous materials remained.).

Huerta's case is more like *Reed Tool Company v. Copelin*, 689 S.W.2d 404 (Tex. 1985). There, the Texas Supreme Court answered the question of "whether an employer who intentionally maintains an unsafe workplace in which an employee is injured may be held to have intentionally injured the employee." *Id*. at 405. In that case, the plaintiff was a machine operator for Reed Tool, and was injured when a chain tong from the lathe he was operating hit him on the head. *Id*. His wife sued, alleging that Reed Tool "caused her husband's injury by intentionally requiring him to work a machine that Reed Tool knew was unsafe, did not meet minimal safety standards, and was defective because of a modification made by Reed Tool." *Id*. The summary judgment evidence contained deposition testimony from two witnesses who both said that plaintiff operated the machine improperly, which they believed caused the injury. *Id*. at 407–08. In addition, the machine he operated was nicknamed "jaws;" some employees were reluctant to operate it; and there had been prior injuries on the very lathe the plaintiff used. *Id*. at 408. The Supreme Court held that while the summary judgment evidence might raise a fact question that Reed Tool was grossly negligent, there was no fact question that Reed Tool "knew with substantial certainty that" Copelin would be injured from his use of the lathe. *Id*. Here, Huerta's reports to Swabco that his truck

needed repairs is not evidence that Swabco knew with substantial certainty that he would be injured.

A decision from one of our sister courts is also instructive. *ExxonMobil*, 2025 WL 3672143, at *1. *ExxonMobil* concerned refinery workers assigned to perform hot work inside a confined vessel that contained residual naphtha following a shutdown and cleaning process.[4] *Id*. at *8–9. The plaintiff produced evidence that the refinery owner knew residual flammable material remained inside the vessel, knew that hot work created an ignition source, and nevertheless repeatedly authorized the work through its permitting process. *Id*. The plaintiff further produced expert testimony that the combination of fuel, oxygen, and an ignition source made a flash fire "inevitable." *Id*. However, there was no evidence that ExxonMobil believed the vessel contained enough residual naphtha that a flash fire was substantially certain to occur when it did or that it was inevitable. *Id*. at *10. The court held the intentional-tort exception did not apply because the evidence showed only that ExxonMobil "knew these elements *could* combine inside the vessel and cause a flash fire" not that they were destined to occur. *See id*. at *9–10 (emphasis in original). The possibility of an accident occurring was not evidence of "substantial certainty." *Id*.

Here too, Swabco may have known that an accident was possible or that a mechanical problem could raise the likelihood of there being an accident, but there is no evidence that they knew it was inevitable. *See Berkel & Co. Contractors*, 612 S.W.3d at 285–86 (clarifying that to show intent, the accident and injury had to be "unavoidable" and that an increase overall risk to employees does not establish "substantial certainty.").

Huerta claims that Swabco failed to preserve evidence and that "affirm[ing] would reward Swabco for failing to take the simple steps that common sense and fairness require [and] would

---

[4] "Naphtha is a highly flammable substance that generates vapors that are toxic to humans." *ExxonMobil*, 2025 WL 3672143, at *8.

encourage an employer to engage in misconduct prejudicial to an injured employee." In substance, Huerta is alleging that Swabco spoliated evidence. "Spoliation is the improper destruction of evidence, proof of which may give rise to a presumption that the missing evidence would be unfavorable to the spoliator." *Beasley v. Wal-Mart Stores, Inc.*, No. 05-18-01542-CV, 2020 WL 772834, at *3 (Tex. App.—Dallas Feb. 18, 2020, no pet.) (mem. op.).

Huerta made similar spoliation claims in his summary judgment response. However, he never requested that the trial court make a finding of spoliation or apply a presumption that the evidence would be unfavorable to Swabco. *Id.* (reviewing denial of spoliation presumption because party "asserted her entitlement to a spoliation presumption in her" summary judgment response). And, even had he done so, he has waived the issue on appeal by failing to make "a clear and concise argument for the contentions made, with appropriate citations to authorities on the record." Tex. R. App. Proc. 38.1(i); *Valadez v. Avitia*, 238 S.W.3d 843, 844 (Tex. App.—El Paso 2007, no pet.).

Because Huerta did not present more than a scintilla of evidence that Swabco intended or was substantially certain that he would be injured, the trial court did not err in granting summary judgment. We overrule Huerta's third issue.[5]

## VI. CONCLUSION

We affirm the trial court's granting of Swabco's no-evidence summary judgment.

---

[5] Because we affirm on the basis that Huerta did not produce more than a scintilla of evidence that Swabco intended to injure him, we need not address his first issue as to whether any pleading defects that Swabco identified should have been raised by special exceptions, as opposed to a no-evidence summary judgment. *See* Tex. R. App. P. 47.1; *Provident Life & Accident Ins. V. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) ("Because the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious."); *Star-Telegram v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995) (holding the same). We also do not reach Huerta's argument that "there is no requirement for Huerta to have designated an expert witness" because Huerta did not produce sufficient evidence regardless of whether an expert witness is required.

MARIA SALAS MENDOZA, Chief Justice

June 30, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.